**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 16-22297-CIV-MARTINEZ/GOODMAN**

WILLIAM CASTRO,

      Plaintiff,

v.

JUSTICE JORGE LABARGA, et al.,

      Defendants.

_____/

**ORDER ON PLAINTIFF'S EFFORTS TO OBTAIN VENUE-RELATED**
**DISCOVERY FROM SITTING FLORIDA SUPREME COURT**
**JUSTICES SUED IN THEIR OFFICIAL CAPACITIES**

Plaintiff William Castro ("Castro"), a disbarred former member of The Florida Bar, filed a lawsuit [ECF No. 1] against all seven sitting Florida Supreme Court justices ("Defendants"), naming them as defendants in their official capacities. Castro alleges that both the former General Counsel for the Florida Board of Bar Examiners ("Board") and its Executive Director engaged in fraud concerning his application for admission and the Board's decision on whether Castro had sufficiently demonstrated rehabilitation.

According to Castro's Complaint, his review of a transcript of the Board hearing panel's confidential post-deliberation discussions revealed that the panel had actually recommended a two-year period of disqualification (i.e., a waiting period to reapply),

rather than the permanent exclusion discussed in the Board's Findings of Fact, Conclusions of Law and Recommendation (to the Florida Supreme Court).

Castro contends that these two officials knew that the hearing panel actually decided by a 3-2 vote to deny his application for readmission with a two-year waiting period to reapply and that the then-applicable rule prohibited the Board from recommending a denial period greater than five years. He further alleges that these two Board officials communicated *ex parte* with two hearing panel members, submitted fraudulently-altered findings and a recommendation to the Florida Supreme Court and made misrepresentations to the Florida Supreme Court in an appellate answer brief.

Castro did not name either of the two Board officials he accused of misconduct as defendants in this lawsuit, however. Instead, he named all the sitting justices on the Florida Supreme Court, asking for declaratory and injunctive relief. Among other types of relief requested, Castro's lawsuit asks this Court to order Defendants to admit him to the Florida Bar or to reinstate and review the Board's initial two-year denial recommendation.

Defendants filed a motion to dismiss [ECF No. 9], based on four separate grounds, asserting improper venue as the first ground for dismissal. It is this argument which Castro says entitles him to obtain venue-related discovery from Defendants.

The Undersigned disagrees, for the reasons outlined below. Consequently, Castro is not entitled to the venue-related discovery he seeks from the justices.[1]

The relevant issues were teed up after an initial discovery hearing, when the parties, in response to an Order directing them to submit briefs [ECF No. 25], filed memoranda. Castro filed a memorandum [ECF No. 29], Defendants filed a response [ECF No. 30] and Castro, with leave of Court, filed a reply [ECF No. 33].

## Applicable Legal Principles and Analysis

Castro has made serious allegations against current and former officials of the Board. If true, these allegations would be extremely troubling, to say the least. But the issue of whether Castro should be permitted to take discovery from the sitting justices of the Florida Supreme Court does not depend on the severity of his substantive fraud allegations or the consequences if they prove true.

---

[1]      Concerning possible objections to this Order, magistrate judges "enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart, Ind.,* 737 F.3d 1107, 1115 (7th Cir. 2013). Pursuant to Federal Rule of Civil Procedure 72(a), which governs objections to a magistrate judge's discovery rulings, the standard of review is "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a). This is an extremely deferential standard of review, and this "high bar" is "rarely invoked." *Cox Enters., Inc. v. News-Journal Corp.,* 794 F.3d 1259, 1272 (11th Cir. 2015). "'To be clearly erroneous, a decision must strike [the reviewing court] as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week old, unrefrigerated dead fish.'" *Id.* at n. 92 (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec. Inc.,* 866 F.2d 228, 233 (7th Cir. 1988)). *See also Hiram Walker & Sons, Inc. v. Kirk Line,* 30 F.3d 1370, 1378 n.2 (11th Cir. 1994) (concurring in the opinion, Judge Dubina invoked the "dead fish" analogy and described that definition as "the best I have seen").

Instead, the analysis of Castro's discovery requests arise from the fact that he has named all of the justices as defendants in their official capacities and involves whether venue is in or outside the district where the pertinent agency is headquartered. To warrant the atypical, exception-type scenario where venue is permitted outside of the district in which the agency is headquartered, the agency must have a substantial physical presence and conduct significant activities in this alternative venue.

The Undersigned concludes that venue is proper in Tallahassee, which is in the Northern District of Florida and that the possible exception to the general rule is simply factually inapplicable here.

First, it makes sense to appreciate the facts surrounding how the Florida Supreme Court operates and to understand the specific discovery which Castro wants.

In their response memorandum, Defendants attached an affidavit from John Tomasino, Clerk of the Florida Supreme Court. In that affidavit [ECF No. 30-1], Mr. Tomasino explained that the Florida Supreme Court conducts oral argument only at the Florida Supreme Court courtroom in Tallahassee and that all orders and opinions of the Court are issued by the Clerk's Office, also located in Tallahassee.

Castro argues that venue is proper in suits against public officials in their official capacities in any district where a state official performs his official duties and contends that Defendants also perform official duties outside of Tallahassee. For example, Castro notes that Justice Labarga obtained travel reimbursements for trips he made to the

Southern District of Florida for events such as the annual Florida Bar meeting, a circuit conference on professionalism and civility at FIU law school and an annual education program for state appellate judges. Castro focuses on the fact that the reimbursement requests included a certification that the travel expenses were incurred in connection with Justice Labarga's official duties. Castro argues that this evidence demonstrates that Defendants do in fact sometimes perform their official duties outside of the Northern District. Therefore, he says he is entitled to learn more information through discovery about these types of "official duties" which he says occur outside of Tallahassee.

Castro contends that the venue discovery he seeks from each justice would be "limited" and "non-intrusive." Specifically, he asks for one set of interrogatories, one request for admissions and one request for the production of documents from each justice. He points out that "no request for depositions is being made at this stage of the proceedings." [ECF No. 29, p. 10].

In his memorandum, Castro notes that the venue discovery would encompass several "areas," which suggests that these are merely broad topics and that he would, if permitted, propound myriad discovery requests for each general topic. These are the discovery areas Castro flagged:

1. List the official duties of Florida Supreme Court Justices (not the Florida Supreme Court).

a. Are these official duties set forth in writing? If so, specifically identify the document and citation or page therein.

b. If some official duties are not set forth in writing, how are these other duties otherwise characterized as official by Defendants? Is there an internal Florida Supreme Court operating guideline which defines or illustrates what can be considered official duties and what cannot?

c. Does each Defendant make an independent determination as to what is an official duty and what is not?

2. Where are these official duties performed? Are all official duties performed in Tallahassee? Can official duties be performed outside the Northern District? Where else? Are Defendants limited by any written authority or custom or practice where any official duties can be performed?

3. When Defendants appear in law-related activities outside of Tallahassee, are those appearances considered in the performance of official duties? Explain.

4. When Defendants appear at law-related activities (meetings, seminars, etc.) outside of Tallahassee:

a. Are they allowed to get paid for participating in such functions (other than their salaries as Justices)? Why or why not?

b. Are the Defendants' appearances in law-related activities outside of Tallahassee in their official capacity as Justices or individual citizens?

c. Are the following official duties which are performed by Defendants outside of Tallahassee/Northern District? If so, please provide recent examples; if they are not official duties, please describe what type of duties they are considered:

1) Sitting on FSC or Bar committees;
2) Participating at legal seminars or judicial colleges;
3) Serving as invited guest lecturer/speaker at law schools, local Bar association meetings, and other forums;
4) Lobbying for judicial reform.

5. Do Defendants ever (*e.g.,* holidays and summer break) perform work on pending cases outside of Tallahassee/Northern District? If so, list the city/federal district in Florida outside the Northern District where each Defendant performed work in any pending case during the years 2012 – present.

6. Does the Florida Supreme Court ("FSC") or the individual Defendants have a budget to obtain reimbursement for travel expenses in connection with the performance of their official duties as FSC Justices? If so, please provide for past two years; if no such budget exists, please explain how such payments for the related travel and lodging were made.

7. For each reimbursement voucher submitted by each Defendant between 2012-present (as set forth in Exhibit C) for travel expenses to or from the Southern District:

> a. Please confirm that the claimed travel expense was actually incurred in the performance of an official duty as a Florida Supreme Court Justice and state what that official duty was;
>
> b. Identify who, if anyone, approved each reimbursement voucher and certified that the travel was on official business of the State of Florida pursuant to F.S. §112.061(3)(a).

8. List all official duties performed by each Defendant in the Southern District of Florida from 2012-present not otherwise included in Exhibit C in which Defendants did not claim or receive reimbursement for any travel expenses.

9. List all official duties performed (or scheduled to be performed) by each Defendant in the Southern District of Florida for 2016-2017**.**

[ECF No. 29, p. 10].

*************************************************

That's an ambitious list of discovery areas, especially for a purportedly limited

discovery inquiry.

Plaintiff contends in his Memorandum [ECF No. 29] that venue is proper in the Southern District pursuant to 28 U.S.C. § 1391(b)(1), which provides that a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).

*O'Neill v. Battisti*, 472 F.2d 789 (6th Cir. 1972) is the only federal appellate case that the parties have cited which has looked at the issue of proper venue where the defendants are sitting members of a state supreme court. *Battisti* arose out of disciplinary proceedings against an Ohio state court judge under the auspices of the Supreme Court of Ohio. *Id.* at 790. During the pendency of the disciplinary proceedings, the Supreme Court of Ohio issued an order removing the judge from the bench until it had issued a final judgment in those disciplinary proceedings. *Id.* The judge filed suit in the United States District Court for the Northern District of Ohio challenging the Ohio Supreme Court's order, naming the justices of the court as defendants. *Id.* The district court issued an ex parte temporary restraining order, prohibiting the Ohio Supreme Court from enforcing its order of removal or taking any other disciplinary action against the judge. *Id.* The justices of the Ohio Supreme Court filed a petition in the Sixth Circuit seeking a writ of prohibition against the district court. *Id.*

The Sixth Circuit granted the writ, and dismissed the temporary restraining order and the entire district court action. *Id.* at 791. The Sixth Circuit's decision was based solely on its conclusion that venue was improper in the Northern District of Ohio.

*Id.* The court's conclusion was based on its finding that the official residence of the justices of the Ohio Supreme Court was in the Southern District of Ohio. *Id.* The court found that "[t]he official residence of the Supreme Court of Ohio is in the place where it performs its official duties, that is, Columbus, the State Capital and the seat of State Government." *Id.* That is because "[u]nder Ohio law, regular sessions of the Supreme Court are held only in Columbus." *Id.* (internal citation omitted). *Battisti,* therefore, holds that "official duties" as it pertains to members of a state supreme court means holding regular sessions of the court.

For several reasons, the Undersigned finds *Battisti* instructive, relevant and persuasive.

First, this is a case in which the justices of the Florida Supreme Court are named as individual defendants sued in their official capacities. Second, the venue discovery issue involves the residence of the defendants rather than where the case arose.[2] Third, in both cases, sessions of the supreme court are held only in the state capital. Plaintiff makes no allegation otherwise, and none of the travel documents Plaintiff attached to

---

[2]     At the time *Battisti* was decided, 28 U.S.C. § 1391(b) provided "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law." 28 U.S.C. § 1391(b) (1966). The statute now provides, *inter alia,* that venue is proper in any district where a defendant resides, if all defendants are residents of the state. 28 U.S.C. §1391(b) (2011). Because the holding of *Battisti* was based on a determination of the residency of state public officials, the revision to 28 U.S.C. §1391(b) has no effect.

his memorandum of law relate to travel **related to a court session** held outside of Tallahassee.

In my view, the mere fact that a Florida Supreme Court justice may periodically travel outside of the Northern District of Florida to attend bar functions or educational seminars and obtains travel reimbursements does not translate the trip into an "official duty" trip sufficient to generate venue in the other districts. If the Florida Supreme Court maintained major offices, courtrooms or staff in other districts, then the result about venue and venue discovery might be different.  But those significant facts, which Castro relies on when citing other cases, are absent here.

For example, Castro relies on *Florida Nursing Home Assoc. v. Page,* 616 F.2d 1355 (5th Cir. 1980), a case involving lawsuits against the former Florida Department of Health and Rehabilitative Services and its secretary. The suits were filed in the Southern District of Florida, but DHRS contended that the Northern District was the only proper venue because that was where the headquarters of the agency was located. *Id.* at 1360. The former Fifth Circuit affirmed the district court's determination that venue was proper in the Southern District. *Id.* at 1361. This decision was based on three factors not present in the instant case: (1) DHRS maintained a large office in the Southern District; (2) much of the business of DHRS was transacted from its Southern District office; and (3) in addition to residence, the claims at issue in that case arose in the Southern District, under 28 U.S.C. § 1391(b) (1977). *Id.* at 1360-1361.

10

But the instant case shares nothing in common with *Page*. First, the Florida Supreme Court, comprised of its Justices, has only one "office" -- the Supreme Court Building, located in the Northern District. Art. II § 2, Fla. Const. Second, Plaintiff cannot reasonably contend that any business of the Florida Supreme Court, and certainly not **much** of its business, is transacted from the Southern District. The business of the Florida Supreme Court is determining cases brought before it, and that critical business is transacted only in the Northern District.

Castro cannot convincingly argue that the attendance by individual Justices at meetings and conferences can be considered as "much of [the] business of the Florida Supreme Court." *Page*, 616 F.2d at 1360. Finally, Plaintiff is seeking venue discovery based solely on the residency prong of the venue statute, 28 U.S.C. § 1391(b)(1), and not on any argument that the claim arose in the Southern District.

Plaintiff's other cases likewise fail to support his venue argument (upon which his discovery requests are based). In *Steinger v. Fla. Bar*, No. 6:14-cv-348, 2014 WL 1612945 (M.D. Fla. Apr. 21, 2014), the defendants, sued in their official capacities, were deemed to reside for venue purposes in the districts **containing the Florida Bar branch offices** where they served as chief disciplinary counsel. *Id.* at *1, *2. Likewise, in *Hildreth v. Dickinson*, No. 99-583-CIV-J-21-A, 1999 WL 33603028, at *3-*4 (M.D. Fla. Dec. 22, 1999), the Florida Department of Highway Safety and Motor Vehicles, and its Executive Director, sued in his official capacity, were determined to reside in the Middle District

because the Department **maintained offices** and conducted a **substantial portion of its business** within that district.

Although not binding, a relatively recent Middle District Court of Florida opinion also undermines Castro's theory (and simultaneously supports the positions urged by Defendants): *Uberoi v. Labarga,* No. 8:16-cv-1821-T-33JSS, 2016 WL 5914922 (M.D. Fla. Oct. 11, 2016). In that case, the plaintiff sued Chief Justice Labarga in his official capacity in a case arising from her denial of admission to the Florida Bar. *Id.* at *1. Chief Justice Labarga moved to dismiss the case on multiple grounds, including improper venue. *Id.* at *2. The court transferred venue to the Northern District, finding both that the residence of Chief Justice Labarga for venue purposes was in Tallahassee, and that the Northern District was the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. *Id.*

In transferring the case to the Northern District of Florida, Tallahassee Division, the *Uberoi* Court rejected as unconvincing Plaintiff's focus on the fact that she took the bar examination in Tampa and participated in a hearing with the Board in Jacksonville. *Id.* at *2. The Court found significant the point, urged by Justice Labarga, that the act Uberoi complained about, the denial of her application to the Florida Bar, was implemented by a written decision of the Florida Supreme Court sitting in Tallahassee. *Id.* In addition, the Court noted that the relief requested, a formal hearing about bar admission, would also occur in Tallahassee. *Id.* Similarly, the relief Castro requests here

-- admission to the Florida Bar -- would also be accomplished through official action of the Florida Supreme Court, sitting in Tallahassee.

The *Uberoi* Court held that venue was proper in the Northern District of Florida, not the Middle District, and granted the motion to dismiss by ordering the case to be transferred. *Id.* at *3.

The Undersigned does not have jurisdiction to grant the venue-based portion of Defendants' motion to dismiss, as United States District Judge Jose E. Martinez is handling that motion and has not referred it to me for a report and recommendations.

Nevertheless, I can determine that venue-based discovery is unavailable to Castro because I am not convinced by his venue theory. Needless to say, this Order is in no way a ruling on the accuracy of Castro's allegations against the two Board officials, the merits of his claims or the appropriateness of the declaratory and injunctive relief he substantively seeks in the lawsuit. It concerns venue-based discovery only.

**DONE AND ORDERED**, in Chambers, in Miami, Florida, on November 3, 2016.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Jose E. Martinez
All counsel of record

13